IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN MARILYN LEMBERG,<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO OPERA ASSOCIATION,<br><br>Defendant. | Case No. 17-cv-06641-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT; DENYING IN PART AND DEFERRING RULING IN PART ON DEFENDANT'S REQUEST FOR ATTORNEY'S FEES AND COSTS; DIRECTIONS TO DEFENDANT** |

Before the Court is defendant San Francisco Opera Association's ("the Opera") "Motion to Enforce Settlement," filed June 16, 2020. Plaintiff Ann Lemberg ("Lemberg"), proceeding pro se, has filed opposition, to which defendant has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

By the instant motion, the Opera contends it entered into a confidential settlement agreement with Lemberg ("the Agreement") and seeks an order enforcing the terms thereof, as well as an award of attorney's fees and costs incurred in connection with said motion.[2] In support thereof, the Opera has submitted emails between its counsel and

---

[1] By order filed June 30, 2020, the Court granted Lemberg's request for an extension of time, vacated the hearing scheduled for July 17, 2020, and advised the parties the matter would be taken under submission upon completion of briefing.

[2] On August 23, 2020, Lemberg filed a "Notice to the Court of Settlement Agreement," in which she states "she will agree to the contested settlement" and asks the Court to "dismiss the case . . . with parties paying their own legal fees and costs." (See Doc. No. 120.) Given the stage of the proceedings, however, such request is hereby denied.

Lemberg that it asserts establish an enforceable settlement. As the content of those communications is undisputed, the primary issue before the Court is whether they give rise to an enforceable contract, specifically, whether they show Lemberg accepted the Opera's settlement offer.

## LEGAL STANDARD

District courts have the inherent power to enforce settlement agreements in actions pending before them, see TNT Marketing, Inc. v. Aaresti, 796 F.2d 276, 278 (9th Cir. 1986), and "[t]he moving party has the burden of demonstrating that the parties formed a legally enforceable settlement agreement," see Woods v. Carey, No. 2:04-cv-1225-AC, 2015 WL 7282749, *4 (E.D. Cal. Nov. 18, 2015). "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally," see Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989), even where, as here, "the underlying cause of action is federal," see United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992); (see also Compl. ¶ II.A (alleging claim under "U.S. Copyright Act")). As the settlement agreement at issue was assertedly entered in California, the Court applies California contract law.

Under California law, the "essential elements" of a contract are (1) "[p]arties capable of contracting"; (2) "[t]heir consent"; (3) a "lawful object"; and (4) a "sufficient cause or consideration." See Cal. Civ. Code § 1550. The parties' consent, which is the only element at issue in the instant case, must be "free," "mutual," and "communicated by each to the other," see Cal. Civ. Code § 1565, and "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings," see Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 208 (2006).

Consent is only mutual if "the parties all agree upon the same thing in the same sense," see Cal. Civ. Code § 1580, and thus, as a general rule, "terms proposed in an offer must be met exactly, precisely and unequivocally for its acceptance to result in the

2

formation of a binding contract," see Apablasa v. Merritt & Co., 176 Cal. App. 2d 719, 726 (1959). Although a "qualified acceptance amounts to a new proposal or counter-offer putting an end to the original offer," see Apablasa, 176 Cal. App. 2d at 726, a "'grumbling acceptance,' which is unqualified, though made with some protest, is sufficient," see Chicago Bridge & Iron Co. v. Industrial Acc. Commission, 226 Cal. App. 2d 309, 317 n.2 (1964), and "where the offeree accepts unequivocally, a contract results even though he requests or expresses a desire for some change in the terms," see id.

## DISCUSSION

In the instant case, on December 31, 2019, at 12:19 p.m., following negotiations over a period of months regarding various changes to earlier versions, some of which changes the Opera agreed to make, counsel for the Opera (hereinafter, "counsel") emailed Lemberg the Agreement and asked her "to return the dated and signed signature page," as well as a signed and dated copy of the Stipulation for Dismissal that accompanied it. (See Doc. No. 86 (Castricone Dec., Ex. F) at 64.)

A few hours later, at 4:02 p.m., Lemberg emailed counsel the following message: "I am signing and sending the signature pages as you asked expecting you to come through on the language you promised [i]n [paragraph] six that was removed . . . and to include what was [i]n [paragraph] twelve [that] my full liberty and property rights as[ ] an American will be respected." (See id. (Castricone Dec., Ex. H) at 81; see also id. (Castricone Dec., Ex. A) ¶¶ 6, 12.)[3] At 4:12 p.m., counsel responded "[i]f this is not final, do not sign it." (See id.) At that same time, Lemberg sent counsel an email that, other than a closing "Happy New Year," states, "[s]ignature pages awaiting changes you promised for releasees except bad boys and my American Liberty and Property Rights unsullied without interference" (see id. (Castricone Dec., Ex. I) at 83), to which email Lemberg attached a signed and dated copy of the signature page of the Agreement and

---

[3] As the Agreement specifies its terms are to be kept confidential, the Court has not described them herein.

3

also a signed and dated copy of the Stipulation for Dismissal.  (See id. (Castricone Dec., Ex. I) at 84-85.)

Later that same afternoon, counsel sent Lemberg an email acknowledging her request for "possible" changes, and, while stating he had "not made any promises regarding [paragraphs] 6 or 12 or any rider," proposing possible language to address the changes to which he understood Lemberg to have referred.  (See id. (Castricone Dec., Ex. J) at 87.)  A few hours later, counsel sent Lemberg an email stating: "I am in receipt of your signature on the present version of the final settlement agreement we proposed – without the revision to 6 or re-incorporating the language from 12[;] [i]n the event I do not hear back [from the Opera], are you accepting the offer, but requesting that those changes still be considered before our client signs?"  (See id. (Castricone Dec., Ex. K) at 90.)

A few days later, on January 3, 2020, Lemberg replied to counsel's question, stating, "The answer is yes." (See id. (Castricone Dec., Ex. P) at 103.)  In other emails sent in the days after she returned the signed copies of the Agreement and Stipulation, as well in the days after she sent the above clarifying response, Lemberg requested the Opera perform its duties under the Agreement (see id. (Castricone Dec., Exs. L, N) at 93-94, 99), repeatedly acknowledged she had signed the Agreement (see id. at (Castricone Dec., Exs. N, Q) 98, 108), and, although indicating she was not entirely happy with its terms and continuing to inquire about her requested changes, stated she would "live with" the Agreement without such changes (see id. (Castricone Dec., Ex. Q) at 108).

Thereafter, on January 9, 2020, counsel sent Lemberg an email informing her the Opera declined to "modify or amend any of the terms" of the Agreement and attaching thereto a "fully executed" copy of the Agreement, signed on behalf of the Opera by counsel and its General Director.  (See id. (Castricone Dec., Ex. T) at 115.)

As noted, defendant argues the evidence before the Court establishes an enforceable settlement.  As set forth below, the Court agrees.

The above-referenced exchange of emails shows the Opera made an offer

4

United States District Court
Northern District of California

1  Lemberg subsequently accepted by sending counsel a signed copy of both the
2  Agreement and the Stipulation for Dismissal.  Although, as noted above, the acceptance
3  was accompanied by language referring to "changes," Lemberg thereafter, in response to
4  the Opera's request for clarification, confirmed she had accepted the offer and was
5  merely requesting the Opera consider the changes she referenced.  As also noted,
6  Lemberg, in other communications sent after returning the signed copies of the
7  settlement documents, acknowledged she signed the Agreement, requested the Opera
8  perform its duties under the Agreement, and stated she would "live with" the settlement
9  regardless of whether the Opera was willing to "make changes to the language."  (See
10 Doc. No. 86 (Castricone Dec., Ex. Q) at 108; see also id. at 106 (stating "if you cannot
11 change the language [I] guess [I] will have to eat it as [I] really want to settle this
12 matter").)
13      In light of Lemberg's response to the Opera's request for clarification, as well as
14 the other post-signature communications referenced above, the Court finds Lemberg's
15 acceptance was unqualified.  See J.B.B. Investment Partners, Ltd. v. Fair, 37 Cal. App.
16 5th 1, 13 n.10 (holding ambiguous response to offer constituted unqualified acceptance
17 where offeree subsequently clarified meaning of original response).  Where an
18 acceptance is unqualified, even if, as here, "made with some protest" and "grumbling," an
19 enforceable agreement results.  See Chicago Bridge & Iron Co. v. Industrial Acc.
20 Commission, 226 Cal. App. 2d 309, 317 n.2 (1964) (holding "where the offeree accepts
21 unequivocally, a contract results even though he requests or expresses a desire for some
22 change in the terms"); see also Williams v. Krumsiek, 102 Cal. App. 2d 541, 544 (1951)
23 (holding acceptance accompanied by "amendments" written on back of contract
24 constituted unqualified acceptance; finding amendments "were merely requests for a
25 further elaboration or modification of the agreement which was to be worked out [later] if
26 [offeror] was willing to do so").  Put another way, a party, "after making a positive
27 acceptance of the offer, . . . may add, as a request, that some modification be made," and
28 "so long as it is clear that the meaning of the acceptance is positive and unequivocal to

5

accept the offer, whether such request is granted or not, a contract is formed." See Laird v. McPhee, 90 Cal. App. 136, 139 (1928).

Accordingly, the Court finds the Opera has met its burden of showing the parties entered an enforceable settlement agreement. The only issue remaining is whether any circumstances precluding enforcement exist. As Lemberg's filings, liberally construed, appear to make reference to two such circumstances, specifically, duress and fraud, the Court next addresses each in turn.

First, Lemberg states the Opera knew she was in "dire straits[,] without housing and suffering ill health" and that she "signed under duress" (see Doc. No. 105-1 at 4 (Lemberg Aff.)), by which statements the Court understands Lemberg to assert she accepted the Agreement under economic duress. Under California law, economic duress requires "a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." See Rich & Whillock, Inc. v. Ashton Dev., Inc., 157 Cal. App. 3d 1154, 1158 (1984) (citing, as examples of wrongful acts, "[t]he assertion of a claim known to be false or a bad faith threat to breach . . . or to withhold a payment" under an existing contract).

Here, Lemberg has submitted no evidence showing the Opera committed a "wrongful act" by which she was coerced into settling or that she was faced with no reasonable alternative. Indeed, Lemberg actively engaged in settlement negotiations, rejecting previous settlement offers that were less favorable to her (see Doc. No. 105-1 (Lemberg Aff.) at 4; see also Doc. No. 86 (Castricone Dec., Ex. B) at 12) and proposing changes that were accepted by the Opera. (See, e.g., Doc. No. 86 (Castricone Dec., Ex. B) at 12; id. (Castricone Dec., Ex. F) at 64-65.)

Courts "are reluctant to set aside settlements and will apply economic duress only in limited circumstances and as a last resort." See San Diego Hospice v. Cty. of San Diego, 31 Cal. App. 4th 1048, 1058 (1995) (internal quotations and citation omitted). Although, when a contracting party is faced with a wrongful act, such party's financial circumstances may be a fact to consider, see Rich & Whillock, 157 Cal. App. 3d at 1158

6

1  (noting "a reasonably prudent person subject to [a wrongful] act may have no reasonable
2  alternative but to succumb when the only other alternative is bankruptcy or financial
3  ruin"), Lemberg's asserted financial difficulties and health problems, in the absence of a
4  wrongful act, do not constitute economic duress, see Sheehan v. Atlanta Intern. Ins. Co.,
5  812 F.2d 465 (9th Cir. 1987) (holding "[s]imple hard bargaining must not be confused with
6  economic coercion").

7      With regard to fraud, Lemberg has submitted an email dated February 20, 2020, in
8  which she asserted the Opera "lied" to her.  (See Doc. No. 110-24 at 3.)[4]  Even assuming
9  the statement to which she refers was made prior to her acceptance of the settlement,
10 however, Lemberg has submitted no evidence to support a finding any such remark was
11 false, let alone that the Opera knew it was false at the time it was made.  See Cal. Civ.
12 Code § 1572 (setting forth elements of fraud).

13     In sum, the Court finds Lemberg has failed to show a cognizable ground upon
14 which to refuse enforcement of the Agreement, and, accordingly, the motion to enforce
15 will be granted.

16     Lastly, the Court turns to the Opera's request for fees and costs.  The prevailing
17 party in an action to enforce a contract may recover reasonable attorney's fees and costs
18 "where the contract specifically provides that attorney's fees and costs, which are
19 incurred to enforce that contract, shall be awarded either to one of the parties or to the
20 prevailing party."  See Cal. Civ. Code § 1717; see also Tiger Bay Village Corp. v. Yihe
21 Corp., No. 13-cv-8837-RSWL, 2014 WL 3662259m at *7 (C.D. Cal. July 18, 2014)
22 (applying Cal. Civ. Code § 1717; awarding attorney's fees incurred in connection with
23 motion to enforce).

24     Here, the Opera contends it is entitled to attorney's fees and costs in the amount
25 of $20,650,[5] relying on a provision of the settlement that states "[i]n the event any action

---

[4] As the above-referenced email appears to have been submitted in the course of confidential settlement negotiations, the Court has not set forth its content herein.

[5] Although the Opera states it is seeking costs, as well as fees, the amount

7

is brought to enforce the terms of this Release and Settlement Agreement or to obtain compensation for any breach of its terms, the prevailing party shall be entitled to recover all attorney's fees and costs reasonably incurred in prosecuting or defending any such action." (See Doc. No. 86 (Castricone Dec., Ex. A) at 9.)  In support thereof, counsel has submitted a declaration stating he expended "in excess of 50 hours" in the preparation and submission of the instant motion and "in excess of 20 hours" in the "preparation, submissions, and attendance at" a court-ordered settlement conference conducted February 26, 2020, all such work billed at the rate of "$295/hour." (See Doc. No. 112-1 (Castricone Reply Dec.) at 1:24-27, 2:1.)  Based thereon, the Opera seeks fees in the amount of $14,750, attributable to work performed in connection with the motion, and fees in the amount of $5900, attributable to work performed in connection with the settlement conference.

With regard to the Opera's request for fees incurred in connection with the above-referenced settlement conference, the request will be denied, as the conference was not an integral part of a proceeding "brought to enforce the terms of [the Agreement] or to obtain compensation for any breach of its terms." (See Doc. No. 86 (Castricone Dec., Ex. A) at 9.)  With regard to the balance of the fees sought, the Court will defer ruling and will afford the Opera an opportunity to make a supplemental showing in support thereof.

**CONCLUSION**

For the reasons set forth above:

1. The Opera's Motion to Enforce Settlement is hereby GRANTED, and the above-titled action is hereby DISMISSED.

2. To the extent the Opera seeks attorney's fees incurred in connection with the court-ordered settlement conference, the request is hereby DENIED.

3. If the Opera wishes to pursue its request for the balance of the fees it seeks, it

---

claimed is wholly attributable to hours expended by counsel in defending the instant case.

1  shall file, no later than August 31, 2020, a supplemental declaration providing a detailed
2  breakdown as to how those hours were expended.
3  **IT IS SO ORDERED.**

5  Dated: August 24, 2020

_____
MAXINE M. CHESNEY
United States District Judge